**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ELAINE W. BURKETT,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CONVERGYS CORPORATION, *an Ohio Corporation*,<br><br>　　　　　　　　Defendant. | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS [ECF No. 12]<br><br>Case No. 2:14-cv-376-EJF<br><br>Magistrate Judge Evelyn J. Furse |

　　　　Defendant Convergys Corporation ("Convergys") moved the Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to dismiss Elaine W. Burkett's claims with prejudice.[1]  (Mot. for J. on the Pleadings and Mem. in Support of the Same ("Def.'s Mot.") 1-2, ECF No. 12.)  Plaintiff Ms. Burkett alleges Convergys violated the Americans with Disabilities Act ("ADA") and breached an employment contract between the parties by failing to accommodate Ms. Burkett's sensitivity to scents, fragrances, and chemicals. (Compl., ECF No. 2.)  The Court held oral argument on December 18, 2014.  (ECF No. 22.)  The Court requested additional briefing that the parties submitted in addition to notices of supplemental authority.  (ECF Nos. 23-26.)  Having carefully considered the submissions of the parties and the oral argument on this motion, the Court DISMISSES Ms. Burkett's state law claims WITHOUT PREJUDICE as time barred, but DENIES the Motion with respect to Ms. Burkett's ADA claim given she filed the notice of claim within six months of the alleged events.

---

[1] The parties consent to the jurisdiction of a magistrate judge.  (ECF No. 10.)

## I.  STANDARD

On a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), this Court must "'accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings' in that party's favor." *Sanders v. Mtn. Am. Fed. Credit Union,* 689 F.3d 1138,1141 (10th Cir. 2012) (citing *Park Univ. Enters. v. Am. Cas. Co.,* 442 F.3d 1239, 1244 (10th Cir. 2006)).  Courts will only grant judgment on the pleadings "when 'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Id.*

## II.  ALLEGATIONS

Taking Ms. Burkett's allegation as true, the Court sets forth the facts that form the basis for this opinion.  "[Ms.] Burkett entered into a valid and binding contract with Convergys governing the terms and conditions of their employment relationship."  (Compl. ¶ 55, ECF No. 2.)  Ms. Burkett concedes she signed a "Convergys Employment Application" ("Application") (Answer Ex. A, ECF No. 7-1)[2] on September 20, 2011.  (Pl.'s Mem. in Opp'n to Def.'s Mot. ("Opp'n") 2, ECF No. 15.)  The Application includes a ten-paragraph list of terms in a section titled "**AS AN APPLICANT YOU AGREE TO AND UNDERSTAND THE FOLLOWING:**".  (Answer Ex. A 4, ECF No. 7-1.)  One provision states:

> 8.   I agree that any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit.  I waive any statute of limitations period that is longer than six (6) months.

(*Id.*)  The final paragraph states, "**I HAVE READ CAREFULLY, HAD THE OPPORTUNITY TO ASK QUESTIONS ABOUT, UNDERSTAND, AND VOLUNTARILY AGREE TO THE**

---

[2]   Convergys attached a copy of the Application to its Answer.  The Court may consider the application on a Motion for Judgment on the Pleadings because "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

ABOVE CONDITIONS OF ANY EMPLOYMENT THAT MAY BE OFFERED TO ME
BY CONVERGYS OR ANY RELATED ENTITY." (*Id.*)

On October 5, 2011, Ms. Burkett began work as a Convergys Customer Service
Representative. (Compl. ¶ 13, ECF NO. 2.) At that time, Ms. Burkett "experience[ed] reactions
to various scents, fragrances and/or chemicals" ranging from an inability to concentrate all the
way to complete mental and physical incapacity. (*Id.*) While Convergys employed Ms. Burkett,
her coworkers exposed her to scents, fragrances, and chemicals that caused "severe physical and
mental reactions." (*Id.* ¶ 14.) During this time Convergys "had a no scent/fragrance policy" for
call center employees but failed to enforce it. (*Id.* ¶ 15–16.)

Ms. Burkett first reacted to scents at Convergys during her initial training. (*Id.* ¶ 17.)
She reported these reactions to her human resources representative. (*Id.*) On more than twelve
occasions after her training and before her constructive termination on January 24, 2012, Ms.
Burkett experienced "significant reactions" to scents in the workplace. (*Id.* ¶¶ 18, 29.) These
reactions included dizziness, confusion, inability to concentrate, muscle lassitude, slowed
speech, increased heart rate, and decreased oxygen levels, among other symptoms. (*Id.* ¶ 27.)
Despite the repeated reports of the problem to the human resources representative, Convergys
"fail[ed] to take any steps to enforce its own policy." (*Id.* ¶¶ 17, 20.) Ms. Burkett even delivered
a physician's letter to Convergys explaining that she suffers from bronchial asthma and fragrance
sensitivity that "could result in acute respiratory and neurological symptoms" if exposed. (*Id.* ¶
24.)

Pursuant to physician instructions, Ms. Burkett gathered physiological data while
working. (*Id.* ¶ 19.) During a January 12, 2012 episode, Ms. Burkett's team lead came near her

several times wearing perfume, causing Ms. Burkett to collapse and shake uncontrollably while her pulse reached 114, and her $O_2$ level registered at 99.  (*Id*. ¶ 19.)

On May 10, 2012, Ms. Burkett filed a timely charge of discrimination with the Utah Labor Commission, Antidiscrimination and Labor Division ("UALD") and with the Equal Employment Opportunity Commission ("EEOC") for "disability, failure to accommodate, failure to engage in the interactive process and retaliation." (*Id*. ¶ 7; Opp'n Ex. A,[3] ECF No. 15-1.)  On February 17, 2014, the EEOC issued Ms. Burkett a Right to Sue Notice.  (Compl. ¶ 8, ECF No. 2.)

Ms. Burkett filed this action on May 16, 2014 alleging four causes of action:  violation of the ADA, breach of contract, unjust enrichment—breach of contract implied-in-fact, and breach of the implied covenant of good faith and fair dealing.  (*Id*. 6–10.)

### III.  Discussion

Convergys argues the Application's limitations clause bars Ms. Burkett's claims.  (Def.'s Mot. 2, ECF No. 12.)  Because the Application constitutes an enforceable contract "waiv[ing] any statute of limitations period that is longer than six (6) months," (Answer Ex. A ¶ 8, ECF No. 7-1), the Court GRANTS Convergys's Motion and dismisses Ms. Burkett's state contract law claims without prejudice.

However, because the phrase "any claim or lawsuit relating to my employment" is ambiguous, and because Ms. Burkett complied with a reasonable interpretation of that clause by

---

[3] Exhibit A to the Opposition is the Charge of Discrimination.  (Opp'n Ex. A, ECF No. 15-1.)  "A district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).  The Complaint references the charge.  (Compl. ¶ 7, ECF No. 2.)  Convergys does not contest its authenticity.  (Reply iii, ECF No. 17.)  Because a motion for judgment on the pleadings employs a similar standard to a motion to dismiss, *Ramirez v. Dep't of Corr.,* 222 F.3d 1238, 1240 (10th Cir. 2000), the charge qualifies for the Court's consideration.

filing her ADA claim with the UALD and EEOC, the Court DENIES Convergys's Motion to

with respect to Ms. Burkett's ADA claim.

## A. Existence of Contract

Before determining the enforceability of Application's six-month limitation period, the

Court must consider whether the Application's provisions form part of an enforceable contract

between Convergys and Ms. Burkett. While the Complaint acknowledges the existence of a

binding, enforceable employment contract, (Compl. ¶ 55, ECF No. 2), Ms. Burkett contends the

Application is not that contract. (Opp'n at 14, ECF No. 15.) "Whether a contract exists between

parties is ordinarily a question of law" for the Court to decide. *Cea v. Hoffman*, 2012 UT App

101, ¶ 9, 276 P.3d 1178, 1186 (citation omitted). In Utah, "formation of a contract requires an

offer, an acceptance, and consideration." *Cea*, 2012 UT App 101, ¶ 24 (citation omitted). "The

relationship of employer and employee is a product of mutual assent expressed by an employer's

offer of employment and an employee's acceptance." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331,

333 (Utah 1992) (*citing* 53 Am. Jur. 2d *Master & Servant* § 15 (1970)).

Ms. Burkett claims Convergys failed to give her any consideration in return for the

Application, making it unenforceable. (Opp'n at 14, ECF No. 15.) "[T]he employer's promise

of employment consistent with certain provisions for an indefinite term constitutes the

employer's consideration for the contract and the terms of the contract itself." *Tomlinson v. NCR

Corp.*, 2014 UT 55, ¶ 13, 345 P.3d 523 (citation omitted). The employment relationship forms a

contract because "the employee's performance of his job consistent with the promised provisions

constitutes the employee's acceptance of the contract terms, as well as his consideration."

*Tomlinson*, 2014 UT 55, ¶ 13 (citation omitted).

The Application states in all capitals and bold type face, "**I HAVE READ CAREFULLY, HAD THE OPPORTUNITY TO ASK QUESTIONS ABOUT, UNDERSTAND, AND VOLUNTARILY AGREE TO THE ABOVE CONDITIONS OF ANY EMPLOYMENT THAT MAY BE OFFERED TO ME BY CONVERGYS OR ANY RELATED ENTITY.**"  (Answer Ex. A 4, ECF No. 7-1.)  Thus the Application made clear any offer of employment included the term requiring Ms. Burkett to file any claim or lawsuit within six months of any complained of employment action.  (*Id.*)  Ms. Burkett admits Convergys offered her a job, and she performed it.  (Compl. ¶¶ 13-15; ECF No. 2.)  The employment Convergys offered constitutes the consideration for Ms. Burkett's agreement to the terms of employment.  *See Tomlinson*, 2014 UT 55, ¶ 13.  Ms. Burkett's performance of her job constitutes acceptance of the terms of employment.  *Id.*  Nothing Ms. Burkett alleges in her Complaint or argues in her brief suggests the limitations provision changed.  Thus, based on the pleadings, consideration did exist for the terms in the Application, and it forms a binding contract between Convergys and Ms. Burkett that includes the limitations provision.

**B.  Unconscionability**

Ms. Burkett next contends the Application is unconscionable.  (Opp'n 15–16; ECF No. 15.)  "A party claiming unconscionability bears a heavy burden."  *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (citation omitted).  Parties unquestionably have the right to contract freely, establish terms, surrender rights, and allocate risks between themselves; they even have the right to enter into "unreasonable contracts or contracts leading to a hardship on one party."  *Id.*  A contract becomes unconscionable when one party lacks meaningful choice in entering into the contract, and the contract terms unreasonably favor the other party.  *Id.* (*citing Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1043 (Utah 1985)).  Utah law

prohibits enforcement of an unconscionable contract.  *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996) (citation omitted).  Unconscionability presents a question of law for the Court to decide. *Sosa*, 924 P.2d at 360.

Courts apply a two-pronged analysis to determine whether a contract qualifies as unconscionable.  *Ryan*, 972 P.2d at 402 (*citing Sosa*, 924 P.2d at 360).  "The first prong—substantive unconscionability—focuses on the agreement's contents.  The second prong—procedural unconscionability—focuses on the formation of the agreement."  *Id.* (citation omitted).  Substantive unconscionability alone may render a contract invalid.  *Sosa*, 924 P.2d at 361 (citation omitted).  Further, while a determination of procedural unconscionability alone may invalidate a contract, "that would be rare."  *Id.*

### 1.  *Substantive Unconscionability*

"[S]ubstantive unconscionability focus[es] on the contents of the agreement, examining the 'relative fairness of the obligations assumed.'"  *Sosa*, 924 P.2d at 361 (citation omitted). "[A] showing of substantive unconscionability requires evidence that a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'"  *Id.* at 362 (citation omitted).  "The terms of the contract should be considered '"according to the mores and business practices of the time and place." ' "  *Id.* at 361 (quoting *Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1042 (Utah 1985) (quoting *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 462 (Utah 1983)).

Ms. Burkett finds four provisions of the application unconscionable:  the six-month limitations period, the waiver of implied contract claims, the agreement to sign non-compete and non-disclosure agreements subsequently, and the waiver of the right to bring claims against Convergys for providing information about Ms. Burkett to other parties.  (Opp'n Br. 15; ECF

No. 15.) Ms. Burkett offers no case law to support for her claim that these provisions make the contract substantively unconscionable.

As an initial matter, Ms. Burkett labels paragraph four of the Application a waiver of contract claims. (*Id*.) It is not. It states in relevant part:

> I agree that any oral representations made by Convergys Corporation are not binding, and that it would be unreasonable for me to rely on any such representations. I also understand and agree that no one has the authority to promise me job security or continued employment, except the President or CEO of Convergys Corporation in a written agreement signed by both of you.

(Answer Ex. A ¶4, ECF No. 7-1.) Ms. Burkett does not waive any claims by agreeing to these two sentences. She merely agrees that oral representations will not form binding contracts, and only the President or CEO can make promises regarding job security or continued employment. These agreements do not oppress Ms. Burkett; they inform her about the terms and practices of her potential future employment.

Ms. Burkett mainly argues that these provisions are unilateral and therefore unconscionable. The unilateral nature of these provisions alone does not make them "unfair." Each party to a contract frequently takes on different obligations to achieve the purpose of the contract. The issue turns on whether the provisions oppress or unfairly surprise Ms. Burkett. The Application clearly sets forth the six-month limitations period, waiver of implied contract claims, and privacy waiver prior to Ms. Burkett even completing the application, let alone beginning employment; thus they do not cause unfair surprise. Ms. Burkett does not allege she found the language confusing or did not understand the meaning of the terms. The Application states the non-compete and non-disclosure agreements will come later. Thus, the Application serves as a general notice on these points, but Ms. Burkett will have the opportunity to see and execute these later.

Ms. Burkett argues elsewhere in her briefing that the six-month limitations period acts as an official bar to her ADA claim because she cannot file the claim until after receiving a right to sue letter that takes more than six months to obtain.  (Opp'n 7-8, ECF No. 15.)  In support of this argument, Ms. Burkett cites *Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012), which held that administrative exhaustion constituted a jurisdictional prerequisite to suit.  Under this theory, a federal court would lack authority to do anything but dismiss without prejudice Ms. Burkett's ADA claim prior to issuance of a right to sue letter, making the limitations clause a disguised bar to bringing federal employment law claims.  Such a clause might likely be substantively unconscionable.  However, between the time of additional briefing on this case and issuance of this opinion, the Tenth Circuit has clarified the law.  *Gad v. Kansas State Univ.*, held that the portions of Title VII governing "'the rights or obligations of parties to a lawsuit,' rather than" those portions contained in Title VII's jurisdictional subsection create "'claim-processing rules, and should not be treated as jurisdictional prescriptions.'"  787 F.3d 1032, 1038 (10th Cir. 2015) (quoting *Barnes v. United States,* 776 F.3d 1134, 1146 (10th Cir. 2015)).  Therefore, the obligation to obtain a right to sue letter does not create a jurisdictional bar to suit.  Hence, Ms. Burkett could have complied with both the Title VII requirements and the limitations clause.

Unlike the contract struck down in *Sosa*, which required the patient to pay the doctor's arbitration fees if the arbitration award did not exceed half the claimed amount, the Application does not so unfairly favor one side over the other.  *See* 924 P.2d at 361-62.  The Application restricts the methods and timeframes within which Ms. Burkett can seek compensation for alleged wrongs but does not entirely foreclose claims or lawsuits.  Although the challenged provisions reduce Ms. Burkett's options, "a conclusion that a term is potentially advantageous to

one side or unreasonable is insufficient, standing alone, to support a determination of substantive unconscionability." *Sosa v. Paulos*, 924 P.2d at 362 (quotation marks and citation omitted).

Ms. Burkett correctly notes that Convergys has failed to make the limitations provision "conspicuous or bold or underlined or otherwise highlighted to bring attention to the rights being waived." (Opp'n Br. 15-16; ECF No. 15). Ms. Burkett fails to note however that the title to the section with these provisions appears in all capital letters, underlined, and bold, stating: "**AS AN APPLICANT YOU AGREE TO AND UNDERSTAND THE FOLLOWING:**". (Answer Ex. A 4, ECF No. 7-1.) Further, as already noted above, the last sentence of the section appears in all capital letters and bold, requiring the signer to acknowledge she has read carefully, had the opportunity to ask questions, etc. These portions of the contract do draw attention to the provisions lying between them. The lack of special font in the limitations provision fails to demonstrate Convergys has oppressed Ms. Burkett. *Sosa*, 924 P.2d at 361 (citation omitted).

Ms. Burkett fails to provide any further explanation of how the four challenged provisions go beyond merely restricting her rights and instead meets the heavy burden of substantive unconscionability. Although each of these provisions undoubtedly favors Convergys, none of them appears "so one-sided as to oppress or unfairly surprise an innocent party." *See Sosa*, 924 P.2d at 361 (citation omitted). Analyzed individually or together, the Application's provisions do not qualify as substantively unconscionable.

### 2. Procedural Unconscionability

"Procedural unconscionability focuses on the negotiation of the contract and the circumstances of the parties." *Ryan*, 972 P.2d at 403 (citation omitted). "[The] principle inquiry is whether there was overreaching by a contracting party occupying an unfairly superior

10

bargaining position." *Id.* (citation omitted).  To evaluate procedural unconscionability, Utah

courts look to the following factors:

> (1) whether each party had a reasonable opportunity to understand the terms and
> conditions of the agreement; (2) whether there was a lack of opportunity for
> meaningful negotiation; (3) whether the agreement was printed on a duplicate or
> boilerplate form drafted solely by the party in the strongest bargaining position;
> (4) whether the terms of the agreement were explained to the weaker party; (5)
> whether the aggrieved party had a meaningful choice or instead felt compelled to
> accept the terms of the agreement; and (6) whether the stronger party employed
> deceptive practices to obscure key contractual provisions.

*Id.* (citation omitted).  "None of the factors is dispositive; rather, [courts] consider all the

circumstances in light of the doctrine's purpose to prevent oppression and unfair surprise." *Id.*

In *Sosa*, the Utah Supreme Court found the arbitration agreement between a patient and

doctor unconscionable.  The doctor's office asked Ms. Sosa to sign three documents less than an

hour before her surgery after she had already undressed and changed into her surgical clothing.

*Sosa*, 924 P.2d at 359.  In one of the three documents Ms. Sosa agreed to arbitration.  *Id.*  Feeling

"rushed and hurried" and believing she had to sign to proceed with the procedure, Ms. Sosa

signed the documents without reading them.  *Id.* at 362.  "In short, Ms. Sosa was in a vulnerable

position when she was shown the document for the first time and asked to sign it."  *Id.* at 363.

The Utah Supreme Court stated:  "This case is extremely close on its facts."  *Id.* at 359.

The Utah Supreme Court reached the opposite conclusion in *Ryan*.  In *Ryan*, a grocery

store employee claimed an acknowledgment form that identified him as an at-will employee

constituted an unconscionable contract.  *Ryan*, 972 P.2d at 402.  The court found that the plaintiff

had a reasonable opportunity to understand the terms of the acknowledgment form and that his

employer had discussed the terms with him.  *Id.* at 404.  The court also found the employer did

not use deceptive practices to obscure the unfavorable provision.  *Id.* at 403.  Although the

employer drafted the form and Ryan had no opportunity to negotiate the at-will term, the court

stated, "these factors alone do not render the acknowledgment unconscionable," noting employers usually draft employment agreements. *Id.* at 404.  The court specifically distinguished *Sosa*, contrasting Ryan's "meaningful choice in deciding whether to accept the terms of the agreement" in choosing to accept and continue in employment with Ms. Sosa's "vulnerable position when she signed the arbitration agreement," immediately before surgery. *Id.* at 403.

The Application prepared by Convergys and signed by Ms. Burkett aligns more closely with the employment contract in *Ryan*.  As in *Ryan*, Ms. Burkett does not allege Convergys limited the amount of time Ms. Burkett had to view the Application, thus she had time to read and understand its terms.  *See id.* at 402.  Ms. Burkett does not allege deceptive practices by Convergys in obscuring the terms beyond the lack of different font already discussed.  *See id.* at 403.  Ms. Burkett had the opportunity to decline the Application's terms.  Although Convergys created the Application and did not permit Ms. Burkett to negotiate its terms, that arrangement typifies the employer-employee relationship.  Ms. Burkett had "meaningful choice in deciding whether to accept the terms of the agreement."  *Id.* at 403.

Because Ms. Burkett has not met her "heavy burden" establishing the Application as either substantively or procedurally unconscionable, the Court will not invalidate the Contract. *See Ryan*, 972 P.2d at 402.

## C.  Integration

Lastly, Ms. Burkett claims the Court cannot enforce the terms of the Application because it references a subsequent agreement, thus precluding it from functioning as an integrated agreement.  (Opp'n 16-17, ECF No. 15.)  Convergys argues that the integrated nature of the Application lacks relevance because Ms. Burkett does not allege that a subsequent agreement

provides for a different limitations period.  (Reply Mem. in Support of Def.'s Mot. for J. on the Pleadings ("Reply") 8-9, ECF No. 17.)  Ms. Burkett cites *Colonial Leasing Co. v. Larsen Bros. Constr. Co.*, which stands for the proposition that "[o]nly when contract terms are complete, clear, and unambiguous can they be interpreted by the judge on a motion for summary judgment."  731 P.2d 483, 488 (Utah 1986) (citing *Morris v. Mountain States Tel. & Tel. Co.*, 658 P.2d 1199, 1201 (Utah 1983)).

The contractual provision at issue in this case is a limitation clause.  The Court must decide at the outset whether the provision is complete, clear, and unambiguous because its purpose is to limit the time in which parties can bring claims.  To delay decision until after discovery would defeat one of the purposes of the clause.  As to completeness, the pleadings do not allege any subsequent inconsistent agreement regarding the limitations period and neither does the briefing.  Utah courts have held "one contract will not supersede another ' "unless it is plainly shown that [such] was the intent of the parties; and this is usually where the later contract fully covers [the] earlier one. " ' "  *Ward v. IHC Health Servs., Inc.*, 2007 UT App 362, ¶ 8, 173 P.3d 186, 190 (quoting *Horman v. Gordon,* 740 P.2d 1346, 1351 (Utah Ct. App. 1987) (quoting *Foote v. Taylor,* 635 P.2d 46, 48 (Utah 1981))).  Therefore, in the absence of an allegation that a subsequent agreement changes the limitations period, the integration argument fails.

## D.  Reasonableness

Utah courts allow contractual limitations periods, "so long as the limitation is reasonable."  *Deer Crest Assocs. I, LC v. Silver Creek Dev. Grp., LLC*, 2009 UT App 356, ¶ 11, 222 P.3d 1184.  While Ms. Burkett's briefing asserts, without explanation, "there is an issue as to whether the provisions of the application are, in fact reasonable," the Court can proceed to render judgment on the pleadings in light of the contract's limitations provision given the lack of

13

explanation of unreasonableness.  *Id.* ¶ 12 (upholding dismissal with prejudice based on limitations clause where plaintiff "provide[d] little analysis as to why, exactly, the thirty-day demand period in the arbitration clause is unreasonable").  Based on the pleadings and briefing, a six-month limitations period does not rise to the level of inherently unreasonable.

## III.  Contract Interpretation

Having found the contract enforceable, Convergys contends the limitations provision requires Ms. Burkett "to file both the present lawsuit (as well as any claims) within six months of her termination."  (Reply 1, ECF No. 17.)  Ms. Burkett argues she complied with this provision by filing "a 'claim' with the Utah Anti-discrimination and Labor Division (UALD) and the Equal Employment Opportunity Commission (EEOC) approximately one month after her termination and that a charge was completed and filed with the UALD (and EEOC) on May 20, 2012." (Opp'n 5 (citing Ex. A), ECF No. 15.)  The limitations provision states:

> I agree that any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit.  I waive any statute of limitations period that is longer than six (6) months.

(Answer Ex. A ¶ 8, ECF No. 7-1.)  Ms. Burkett argues "[n]owhere within the exculpatory language of the application does it state that Burkett must file *this action* within six months, or that the only appropriate place to commence her claim or lawsuit is federal district court." (Opp'n 5, ECF No. 15 (citation omitted).)  By filing her claim with the UALD and EEOC, Ms. Burkett contends, she satisfied the limitation provision as to these claims.

Convergys contends the requirement to file "any claim or lawsuit," (Answer Ex. A ¶ 8, ECF No. 7-1), "makes clear that any and all claims Burkett might file, as well as any and all lawsuits she might file, would ***all*** have to be filed within six months."  (Reply 1, ECF No. 17.)

The Utah Supreme Court described contract interpretation as follows:

"The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."  To ascertain the parties' intentions, we look to the plain meaning of the contractual language, and "we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none."

*Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2013 UT 12, ¶ 10, 322 P.3d 620, 622 (quoting

*WebBank v. Am. Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 17, 54 P.3d 1139 & *Café Rio, Inc. v.*

*Larkin–Gifford–Overton, LLC,* 2009 UT 27, ¶ 25, 207 P.3d 1235 & *Selvig v. Blockbuster Enters.,*

*LC,* 2011 UT 39, ¶ 23, 266 P.3d 691).  Courts first look to the contract's plain language to

determine the parties' intent.  *Nolin v. S & S Const., Inc.*, 2013 UT App 94, ¶ 12, 301 P.3d 1026,

1029.  "A contractual term or provision is ambiguous if it is capable of more than one reasonable

interpretation because of uncertain meanings of terms, missing terms, or other facial

deficiencies."  *Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶ 64, 266

P.3d 671, 687 (quotation marks and citation omitted).  Courts follow a two-step process to

resolve ambiguous language in contracts:  first courts "seek to resolve the ambiguity by looking

to extrinsic evidence of the parties' intent.  If extrinsic evidence does not resolve the ambiguity

and uncertainty remains, only then will [courts] resolve the ambiguity against the drafter."  *Id.*

(citations and footnotes omitted).

Each party provides a reasonable interpretation of the "any claim or lawsuit" language.

At this stage of the case, based solely on the pleadings, the Court finds the contract language

ambiguous on this point.  On a Motion for Judgment on the pleadings, the Court takes the

allegations of the Complaint and reasonable inferences therefrom as true.  *Sanders,* 689 F.3d at

1141.  Because of the procedural posture of this motion, the Court will not consider extrinsic

evidence.  In deciding a motion for judgment on the pleadings, the Court considers only the

Complaint, the Answer, and documents attached as exhibits to either.  None of the pleadings before the court alleges extrinsic facts potentially altering the interpretation of the clause's ambiguous language.  The Court must also make reasonable inferences in favor of the non-movant.  Therefore, at this stage, the Court accepts Ms. Burkett's interpretation of the ambiguous language as requiring a terminated employee to file a claim or lawsuit within the six-month limitations period.

Here, Ms. Burkett did file her EEOC and UALD claim within six months of her termination from Convergys.  (Opp'n 5, ECF No. 15 (citation omitted); *see also* Compl. ¶ 7, ECF No. 2.)  Because she filed an EEOC and UALD claim arising from the same facts as her Complaint's ADA allegation, she satisfied the Application's limitations requirement as to these claims.  By filing the claim, Ms. Burkett filed "a" claim relating to her employment with Convergys, preserving her ability to pursue that claim after the six-month window closes.  Because Ms. Burkett complied with the Application's requirement to file either a claim or a lawsuit within six months of termination, the Court DENIES Convergys's Motion as to Ms. Burkett's first cause of action.

The Court must strive, however, to interpret the contract "giving effect to all and ignoring none" of the agreed-upon provisions.  *Osguthorpe*, 2013 UT 12, ¶ 10 (quotation marks, citations, and alteration omitted).  Although the Court found the "any claim or lawsuit" language ambiguous, paragraph eight's second sentence is not.  Stating "I waive any statute of limitations period that is longer than six (6) months" leaves no room for misinterpretation.  (Answer Ex. A ¶ 8, ECF No. 7-1.)  The Application bars Ms. Burkett from initiating claims more than six months following her termination on January 24, 2012.  Unlike her ADA claim, Ms. Burkett initiated her Utah state law claims more than two years after her termination.  Permitting these causes of

16

action to proceed would contravene the contract's language.  Because the Application limits terminated employees from initiating either claims or lawsuits more than six months after termination, the Court GRANTS the Motion with respect to Ms. Burkett's second, third, and fourth causes of action and DISMISSES them without prejudice.

## D.  Leave to Replead

Rule 15 of the Federal Rules of Civil Procedure directs the Court to "freely give leave when justice so requires" for parties to amend their pleadings.  Fed. R. Civ. P. 15(a)(2).  Convergys correctly notes the Court "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint."  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (quotation marks and citation omitted, alteration in original).  Ms. Burkett contends she can plead additional facts to support her contractual defenses that could spare her state claims from dismissal.  (Opp'n 18, ECF No. 15.)  Accordingly, the Court dismisses Ms. Burkett's state law claims without prejudice and gives her fourteen days to file an amended complaint.

## III.  Conclusion

For the reasons set forth above, the Court DISMISSES Ms. Burkett's breach of contract, unjust enrichment—breach of contract implied-in-fact, and breach of the implied covenant of good faith and fair dealing WITHOUT PREJUDICE.  The Court DENIES Convergys's Motion for Judgment on the Pleadings as to Ms. Burkett's ADA claim.  The Court GRANTS Ms. Burkett fourteen days from the date of this order to file an amended complaint.

DATED this 23d day of July, 2015.

BY THE COURT:

*Evelyn J. Furse*

17

EVELYN J. FURSE
United States Magistrate Judge